We'll move to our next case of the day, Crum & Forster Specialty vs. DVO, Inc. Appeal Number 18-2571. May it please the Court, my name is Monty Weiss. I represent DVO, Inc. We are requesting the reversal of the district court's grant of summary judgment by finding that the breach of contract exclusion contained in the endorsement to the Crum & Forster policy renders the coverage illusory. And we're asking to reform that policy by striking the first paragraph of that endorsement's provision. Crum & Forster creates- Exclusion renders the coverage illusory. Wouldn't we need to remand for the district court to consider what the reasonable expectations of the parties were and whether the contract could be reformed? The reasonable expectations can be determined as a matter of law by this court. Crum & Forster created this exclusion so broad that it guarantees that it will never have to pay under the errors and omissions policy because every claim against DVO for wrongful acts has to arise out of a contract, which is precisely what the exclusion prevents. This result is simply done by following the policy language. The initial grant of coverage under the errors and omissions portion of the policy says that Crum & Forster agrees to pay damages because of a wrongful act by DVO. The policy then defines a wrongful act as essentially defective professional services. The policy then defines professional services as functions performed for others by you, meaning DVO, that are related to DVO's work as an engineer. Because the policy defines professional services as functions for others by you, they can only occur by contract. DVO offers to perform professional services for others in exchange for compensation. This contract's what I want, offer, acceptance, consideration. The exclusion, however, is so broad that it bars any coverages for any damages that are based upon or arising out of any breach of any type of contract, regardless of whether wrongful acts are alleged. The exclusion applies to bar coverage if the loss has some relationship to the contract that DVO entered into in order to perform its professional services. Do we have evidence as to the added cost to DVO of including the errors and omissions coverage, which might give us an idea as to DVO's reasonable expectations as to the scope of the coverage for it? The If the cost was minimal, OK, the district court's position that it could effectively be limited to third party claims might make more sense than if, for instance, the coverage was costly, suggesting an expectation of more widespread protection for professional malpractice. No, we cannot determine what that portion is for errors and omissions coverage because it was a package policy that provided for a number of different types of coverages for a set total premium. However, in response to your other point, which is if it's not a large dollar amount, does that determine reasonable expectations? No. We determine reasonable expectations by looking at, in part, the type of policy provided and the purpose of that policy. Professional liability policies, and this is what even the Wisconsin Supreme Court referenced in the 1325 case, generally a policy of professional liability insurance is issued to professional persons or entities to protect them against liability for malpractice, errors, or mistakes that occur in the course of their professional duties. That's its purpose. And that was found at footnote 13 of that case. The purpose of errors and omissions coverage is to protect the insured from professional malpractice. Just like attorneys, engineers, architects, that's its purpose. So we look at the actual policy language and the purpose of the policy. So the underlying case in this one, this case arises out of another case. And quite frankly, the details of that case are largely irrelevant for this motion. But the important point of the underlying case is that the underlying case, DVO, was sued by WTE for professional negligence. It was alleged as a breach of contract. But in Wisconsin, we look at the facts alleged in the plaintiff's complaint, not the title of it. And here, there are specific allegations of professional negligence. That triggers the duty to defend under the errors and omissions portion of the policy for crumb enforcer. Mr. Weiss, could I go back to the procedural issue? Did you cross move for summary judgment? There's no indication of it that I saw in the district. No, we did not move for summary judgment on that issue. Which may be relevant to Judge Rovner's question about a possibility of a remand. Sure, we did not do that. Both parties agreed that this breach of contract endorsement issue was pivotal. And so we decided to fast track that with the court's consent and brief that, bring it before the court by summary judgment and brief it. Can I ask you, the district judge responded to your illusory coverage argument by saying, well, no, you've got coverage for these third party claims. Where did that come from? I don't know. The district court did say that in its opinion. And I think that's wrong. What the district court said is, looking at the language of the policy, it's clear, the exclusion, I'm sorry, it's clear that Crum and Forster intended only to provide coverage for third parties' claims and not for DBO's contracts with its customers. But that's nowhere in the exclusion. Do you know, as I understand it, your theory is that the broad language of the exclusion gives errors and omissions insurers the ability to invoke that exclusion against third party claims. Correct. Do we have evidence in Wisconsin case law or elsewhere that E&O insurers are actually doing that? I don't have anything in the record for that. I know that if you look at that Shelley versus Moore case that we cited, that was a professional negligence claim, a breach out of the management contract. So we have someone who was injured, a tenant was injured in the building. There were some allegations that the realty company didn't properly maintain it. And then the realty company was under a management contract to do so. The injured party sued the owner. And then the owner sued the management company, saying, hey, this was your job. And in a somewhat related, the professional management's company had a bodily injury exclusion. And they said, it arises out of the bodily injury. The damages aren't any different. So in somewhat of an analogous way, that's there. But we have to look at the policy language, because that's how we're going to apply whether there's coverage for a particular loss. Could I also ask you to address one of the questions, or one of the arguments that Crum and Forster makes, which is that in essence, under your reading, the errors and omissions policy looks like a performance bond or a warranty for contract performance. Is that correct? And if so, should we be troubled by that? First of all, it's not correct. The language that Crum and Forster was looking at of a performance bond is what the courts have consistently talked about with general liability policies. Commercial general liability policies that are issued to contractors and the like, and they do a bad job with their work, and they have to repair or replace their work, the court said, we're not going to turn a CGL policy into a performance bond. They're designed to protect against claims against third parties. The purpose of the errors and omissions policy is to protect that person from professional negligence. And that's what the claims were against DVO in the underlying case. As pointed out, the arising out of language is incredibly broad in Wisconsin. The damages and the liability in the case of a professional engineer will always grow out of, or flow from, the contract. The contract will always furnish the opportunity for the performance of the work. And again, if we go back to the definition of professional services, they are the performance of functions for others by you. Has to arise out of a contract. Without the contract, there's no damages. Because nothing's done, the professional services are not rendered. That's really kind of in core our point with regard to the fact that the exclusion is so broad. In terms of reformation, our position is that the court made a couple of errors with regard to reformation. And this points out what Judge Rovner talked about earlier. And that is the district court says a reasonable insured would rely upon the language of the exclusion in order to have a reasonable understanding of what the policy would cover. Well, our position is that that exclusion creates the illusion of coverage. It's void as against public policy. No reasonable insured would rely upon a policy provision that violates public policy. You're into your rebuttal time. I'm sorry? You're into your rebuttal time, but you can use it if you want. I'm going to stop now and reserve a little bit of time for rebuttal. Thank you. Thank you very much, Mr. Weiss. Mr. Evans for Crum and Forster. Morning, Your Honors. May it please the court, my name is Jeffrey Evans. I work from Bond Region Roper. I'm here representing Crum and Forster, a specialty insurance company. I think the court put its finger on the question here. Why did Judge Griesbach come up with an example of a third party claim, the potential of a third party claim under this insurance policy? And that's because in order to find that the policy is illusory, the court has to determine that there's absolutely no possibility of any coverage, of any claim that could be covered under the policy. What we have here is an E&O policy that could have provided protection to DBO for its own breach of the contract with the other party to the contract. That was taken out by the breach of contract. So what's left? What's left is any errors or omissions that cause property damage or bodily injury, and DBO in its own reply. And that do not arise from a breach of a contract. Right. But there's. So given the definitions of wrongful act and professional services, can you give us an example of something that would qualify for coverage under this? Sure. The problem with DBO's argument is it's really conflating the idea of something that arises out of a professional service and something that arises out of contracts. So they give the example in their reply brief of an invitee to the property, comes on the property, and the anaerobic digester explodes, lands on top of the invitee, causes bodily injury. So that's typically the kind of thing that a business would have covered under their CGL policy. Which is precisely. So what is the errors? What coverage do you get for that under the E&O policy? You get coverage for it under the E&O policy because there's a wrongful act, a breach of their professional duties with respect to the engineering. So they've misengineered it and it blows up. In the course of performing their contract, right? In the course of performing the contract vis-a-vis the other contracting party. But the invitee, who's a complete stranger, his claim isn't based on a contract. It doesn't have to be based. It just simply has to arise out of a breach. No, because Wisconsin courts have said, yes, based upon or arising out of is construed broadly. But it has limits. Where's the limit here? The limit would be that the tort claim has no, it doesn't arise out of it. It's not based on the contract. The invitee is not going to. It arises out of the breach. It's not a question of the legal duty. But I don't see where the rainbow insulators case got their theory. I don't see where Judge Riesbach got his theory here. Simply because, again, you're conflating the breach of their professional obligations, the breach of their duties as an engineer, with a breach of the contract. Again, the policy. Look, if you look at the Wisconsin Supreme Court in 1325 North Van Buren, it recognizes the derivative liability of, in the complaint, doesn't control. And that claims of negligence in professional services sound in both tort and contract law. Doesn't that overlap essentially render the two inseparable? Because professional malpractice will always arise from at least an implied contract. So, I am having difficulty with your argument here. Well, the problem is we're talking about two different things. We're talking about a claim between the parties to the contract. And yes, Wisconsin courts have said that contractual obligations, negligence, they're tied together. But for that invitee, or let's say that the digester resulted in pollution to a neighboring property, again, that neighbor isn't going to have a contract claim against DVO. They're gonna have a tort claim. And the courts have specifically talked about the fact that in Wisconsin, every party owes a duty, an ordinary care for his or her activities and the person is negligent when they feel exercised reasonable care. And wouldn't that be at least an implied term in any contract for professional services that DVO would enter into? Right, again, vis-a-vis the party that they're entering into the contract with. But a stranger to the contract, their claim is not gonna be based on Okay, well, suppose we have the contact, let's suppose the third party goes after DVO's customer, says your digester blew up, okay? And WTE, is that the right name, turns around and says to DVO, you guys screwed up. Those look like claims arising out of professional negligence that would be a breach of DVO's And a claim for a contribution, that might apply. But the problem here is, because if I understood the court's question correctly, the invitee sues the other party to the contract and they come and ask for us for a contribution. I'm not certain that it would apply because again, the contract, the underlying claim, that would be more like the case cited by DVO where somebody was injured, there was a bodily injury claim. Because again, we're talking about two different entities. All the insurance company has to do in response to that kind of an argument is say, well, insured, you're being accused of having screwed up professionally, failed to exercise appropriate professional standards. That's a breach of your contract with your customer. So our breach of contract exclusion applies. I'm just not seeing what's wrong with that argument, but it obviously blows up any coverage. Well, you're asking about yet another type of claim because our position is, and what Judge Griesbach found, and the other courts in Wisconsin found that. Other, what other court claims? What other courts? We cited the Great Lakes case. That case also talked about the fact that there could be tort claims that are not based on contract. In that case, it was. But don't involve a breach? Again, there's a difference between a breach of their contractual obligations and a professional negligence. Because what the court is suggesting then is that there's really no coverage for third party claims based on this policy. I'm suggesting that an E&O policy for engineers and architects covers damages to both their immediate clients and to third parties who are injured by that negligence. That's the point of the insurance. Right, but of those two, this policy carves out the claims vis-a-vis the other contracting party. It does not carve out claims by third parties. I think I'm reading Great Lakes Beverages exactly the opposite of the way you are. Because it seems to me that the arising out of language there is so broadly construed that it requires only that there be some causal relationship between an injury and the risk for which the coverage is provided. And I mean, it's such an expansive interpretation of arising out of, I don't see how even third party claims escape the reach of the exclusion clause. Well, in Great Lakes though. When I are really reading that case very differently. Yeah, because in Great Lakes the tort claim was based on the existence of an underlying claim. And the tort claim was tortious interference with contractual relationships. And that depended on whether or not there was a contract underlying that claim. So the court said in that case, it has to have arisen out of an underlying contract. What I'm saying, and what Bruce Bach held, was that that third party, they're a complete stranger. They would be allowed to sue, just like somebody sues because their car blows up and a part malfunctioned and it was done by an engineer. I mean, these policies are very different from an attorney's errors omissions policy. Because attorneys don't, as a general rule, don't in their practice, don't have claims that are gonna result in bodily injury or property damage. They're only gonna be for breaches of their obligations with their clients. Engineers, architects, they're different. They design things that can blow up or fall down and injure third parties. And the only way they get coverage for that is through a professional E&O policy. So show us cases where those kinds of claims are being covered, despite this sort of exclusion. Well, there really are almost no cases that have addressed this exclusion specifically in Wisconsin or other jurisdictions. But other jurisdictions have found that arising out of a breach contract, even though it's broad, it doesn't intend to include tort claims. And we cited some contracts, some cases from, I believe, New Jersey and California that put limits on that. But in effect, in order to find this policy illusory, you would have to claim, you'd have to find that every tort claim by some third party is based on arising out of the contract. And would the... Well, it has to, I mean, let's go, the logic is through your definitions, right? Which is, it has to be a wrongful act. And that's defined as an act, error, or omission in the rendering or failure to render professional services by any insured TVO, defined again in turn as those functions performed for others by you or by others on your behalf related to your practice as a consultant engineer, et cetera. So we're talking about professional errors, right? Right, a professional error in designing something that blows up and causes problems. I mean, this is why the CGL policy wouldn't apply because the CGL policy excludes coverage for claims arising from a professional error. E&O policy complements that by saying that we're gonna provide coverage for both your claims with your contracting party and claims by third parties. And the breach contract exclusion merely takes out that claim by the contracting party. And we have the Rainbow case, which is unpublished, so it's not controlling, but it is persuasive of how a court in Wisconsin would rule on this issue. And we have the Great Lakes case that is published that even though they found in that case that it arose out of, they say the implication certainly that there would be court claims that could arise that weren't based in contract. Again, we're talking about the claim itself by the third party, not the fact that you're performing the contract. Because if it was that way, every professional operates under a contract with somebody else. But the third party, everybody else in the world, they're not bound by that. Are you talking about the General Casualty case? Is that what you were just? Yes, General Casualty versus Rainbow Insulators. Yeah, well, that case covered property damage, not professional malpractice generally, which might not overlaps so completely with the breach of contract exclusion. And the discussion in General Casualty, I must say, as to the issue of illusory coverage is limited to a couple of sentences with no reasoning or development. So I can't tell from the court's opinion precisely what claims it believes will fall within the exclusion and what type of claims would still be covered. So I can't really analogize that case to our case. Well, sure, that case also involved E&O coverage and it involved property damage. I mean, property damage, bodily injury, two sides of the same coin. And the reason that the court gave was that they cited to Wisconsin authority  to the world at large. So they're segregating out. Yeah, they assume that there can be conduct that is not a delay or failure to perform under a contract term, right? And how does that, give me, I'll try one more time. Is there an example of a tort claim that involves conduct that is not a delay or failure to perform under a contract term that would still fit within your policy's definition of a wrongful act in professional services? Yeah, again, the engineer's failure to perform in compliance with reasonable care standards for an engineer and the location, that failure exists separate of the contract and for the third party, that's what they would be suing under. They would say, hey, you, TVO, breach the standard of care under tort law, not under contract law. They'd be suing for a tort claim, not a contract claim. So it's the label that matters, you think? Well, no, because they wouldn't allege anything that would remotely resemble a contract claim. It wouldn't be pledged in tort. So whether you call it tort or whether they call it contract, when you look at the allegations, they would be based in tort. Okay, thank you very much, Mr. Evans. Mr. Weiss, any rebuttal? The one point I have in listening to opposing counsel is if you take a look at the appendix, the appendix that we put together, page 114, under the common exclusions, it says this policy does not apply to damages, defense costs, cleanup costs, or any loss, cost or expense or any claim or any suit that relates to these exclusions. There will never be coverage under the errors and omissions policy for any professional services performed by DBO because it will always arise out of the contract and this policy excludes every possible claim damage suit. Unless this court has any other questions for me, I don't have anything else. All right, thank you very much. Thanks to both counsel, Mr. Evans, Mr. Weiss, and the case will be taken under advisement. The court will take a 10 minute recess.